

**In the
Court of Appeals
Second Appellate District of Texas
at Fort Worth**

———————————————

No. 02-18-00229-CR

———————————————

RICHARD LEE LEGANS, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1466170D

Before Gabriel, Kerr, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellant Richard Lee Legans appeals his conviction and related eight-year sentence[1] for indecency with a child by contact. In two points, Legans argues that the trial court abused its discretion by denying his motion for mistrial regarding what he contends was improper jury argument by the prosecutor, and he argues that the statute that allowed the trial court to impose $100 in court costs for the county's child abuse prevention fund is facially unconstitutional. We will affirm.

## II. BACKGROUND

Because Legans does not make a sufficiency-of-the-evidence argument and because resolution of this appeal is not heavily dependent upon all the evidence introduced at trial, we will briefly recite only the basic facts of this case to contextualize Legans's arguments on appeal.

According to the complainant in this case, one night in November 2010, Legans, who was dating the complainant's mother at the time, came into the complainant's room as she slept, rubbed his hands on her thighs, and then rubbed "[t]he inside" of her genitalia. The complainant was fourteen years old at the time. Months later, in 2011, the complainant made her outcry to her mother.

---

[1]The trial court suspended imposition of the eight-year sentence and placed Legans on community supervision for ten years.

Sergeant Samuel Nance, who worked for the City of Watauga Police Department at the time of the complainant's outcry, testified at trial that after initially interviewing Legans and investigating the complainant's outcry, he obtained an arrest warrant for Legans on August 3, 2011, but that Legans was not arrested until sometime in 2016. Nance said that after the issuance of the arrest warrant, he was able to contact Legans via a phone call and informed him of the arrest warrant. Nance further said that he attempted to locate Legans using the sparse information Legans had given him during the interview but was unable to obtain an address regarding Legans's whereabouts.

Ultimately, a jury found Legans guilty of indecency with a child by contact and assessed punishment at eight years' confinement. The trial court suspended imposition of the sentence and placed Legans on community supervision for ten years. In the court's assessed costs, the trial court ordered that Legans pay $100 for "Child Abuse Prv." This appeal followed.

### III. DISCUSSION

#### A. The prosecutor's closing argument and Legans's motion for mistrial

In his first point, Legans argues that the trial court abused its discretion by denying his motion for mistrial. Specifically, Legans argues that the prosecutor reversibly erred during closing arguments by arguing "falsely that [Legans] had intentionally evaded arrest by going into hiding." Legans points to this exchange made during the State's closing argument:

3

[Prosecutor]: Let's talk about when this case was filed. It was filed in 2016. That is correct. But you know what, there has been an active warrant for him since [2011]. That's not [the complainant's] fault at all. The defendant fled. That's why the case didn't get filed in 2000 -- until 2016.

[Defense Counsel]: Objection; mischaracterization of the testimony.

THE COURT: That's sustained.

[Prosecutor]: It didn't get filed until 2016. Could have been filed sooner. But you know what, you have to have someone to do that. You have to have a defendant. Didn't know where he was.

[Defense Counsel]: Objection; goes against the testimony, Your Honor.

THE COURT: That's testimony.

[Defense Counsel]: Move to strike.

THE COURT: Strike the last statement –

[Defense Counsel]: Move for a mistrial.

THE COURT: -- of the prosecutor. And that's denied.

In this first point, Legans argues initially that he has preserved this issue for our review. To the extent that Legans relies upon the prosecutor's statement that "[t]he defendant fled" to make his argument, we disagree that Legans has preserved this issue for our review.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A mistrial is appropriate only for a narrow class of highly prejudicial and incurable errors and may be used to end trial proceedings when the error is "so prejudicial that expenditure of

4

further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). But in order for a reviewing court to address an issue related to the denial of a motion for mistrial, a party must preserve the issue for our review. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007).

Rule 33.1 of the Texas Rules of Appellate Procedure provides that, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely and specific request, objection, or motion. Tex. R. App. P. 33.1; *see also Griggs*, 213 S.W.3d at 927. In accordance with Rule 33.1, a motion for mistrial must be both timely and specific. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent. *Griggs*, 213 S.W.3d at 927; *Wilkerson v. State*, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994). In this setting, the preferred procedure for preserving error is to (1) object, (2) request an instruction to disregard, and (3) move for a mistrial. *Young*, 137 S.W.3d at 69. And although this sequence is not always essential to preserve complaints for review regarding the denial of a motion for mistrial, the essential requirement is a timely, specific request that the trial court refuses. *Id.*

Here, although Legans followed this preferred sequence regarding the prosecutor's comment that officers "[d]idn't know where [Legans] was," he did not follow this sequence regarding the prosecutor's comment that "[t]he defendant fled," a comment that was made several statements prior to the "Didn't know where

5

[Legans] was" comment. As can be seen from the exchange recited above, and as Legans acknowledges in his brief, the trial court sustained his objection to the prosecutor's argument that Legan had "fled" from police. But Legans does not explain why he did not continue to pursue that objection under the preferred sequence nor does he explain how the preservation of his later objection somehow preserved his earlier objection. We hold that Legans has failed to preserve any possible error regarding the prosecutor's statement that Legans had "fled" from police because he did not follow the proper sequence nor ultimately move for a mistrial as soon as the prosecutor commented that he had "fled." *See Griggs*, 213 S.W.3d at 927 ("A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent.").

There remains, however, the question of whether the trial court abused its discretion by denying Legans's motion for mistrial regarding the "Didn't know where [Legans] was" comment, which Legans seems to argue was a repeat or continuation of the "false narrative" that Legans had "fled" from police between the time when the arrest warrant was issued and when the State ultimately took this case to trial. To the extent that Legans's argument is predicated on the two comments being the same argument, Legans has also failed to preserve this argument for our review for the same reasons that he failed to preserve his argument about the "fled" comment—he did not timely move for a mistrial the first time the prosecutor made the objectionable jury argument. *See Young*, 137 S.W.3d at 70 ("If a party delays motion for mistrial, and

6

by failing to object allows for the introduction of further objectionable testimony or comments and greater accumulation of harm, the party could no more rely on the untimely motion for mistrial than on an untimely objection.").

And to the extent that the "fled" comment and the "Didn't know where [Legans] was" comment are distinctly different arguments, we disagree that the trial court abused its discretion by denying Legans's mistrial motion because the prosecutor's comment that police "[d]idn't know where [Legans] was" was both a summation of the evidence and a reasonable deduction from Nance's testimony.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992); *Whitney v. State*, 396 S.W.3d 696, 704 (Tex. App.—Fort Worth 2013, pet. ref'd).

In this case, Nance testified that when he first interviewed Legans, but prior to the issuance of the arrest warrant, Legans told Nance that he was staying with his aunt but that he did not know the exact address because he had recently moved there after the complainant's outcry. Nance further testified that although he had attempted to locate Legans after the arrest warrant had been issued, he was unable to obtain the aunt's address, the only location that Legans had provided to Nance. The prosecutor's argument to the jury that police "Didn't know where [Legans] was," is a direct summation of Nance's testimony.

7

Moreover, the prosecutor's argument was a reasonable deduction from Nance's testimony because Nance could not locate an address for Legans and did not know where Legans was after the issuance of the arrest warrant. Indeed, the trial court's initial response to Legans's objection was "[t]hat's testimony" but sustained the objection anyway, instructed that the comment be struck, and then denied Legans's mistrial motion. We conclude that the trial court did not abuse its discretion by denying Legans's motion for mistrial predicated on the "Didn't know where [Legans] was" comment because the prosecutor's argument was proper. *See Felder*, 848 S.W.2d at 95. We overrule Legans's first point.

## B. The constitutionality of Texas Code of Criminal Procedure Article 102.0186

In his second point, Legans argues that Texas Code of Criminal Procedure Article 102.0186, which directs persons convicted of child sexual assault or related offenses to pay $100 in court costs to be deposited in the county child abuse prevention fund, is facially unconstitutional because it violates the Texas Constitution's Separation of Powers Clause. *See* Tex. Code Crim. Proc. Ann. art. 102.0186. As Legans notes, this court has previously rejected this argument, holding that Article 102.0186 is not facially unconstitutional because the $100 fee relates to the administration of the criminal justice system. *See Horton v. State*, 530 S.W.3d 717, 725 (Tex. App.—Fort Worth 2017) (en banc), *pet. ref'd*, 537 S.W.3d 515 (Tex. Crim. App. 2017); *Ingram v. State*, 503 S.W.3d 745, 749 (Tex. App.—Fort Worth 2016, pet. ref'd);

8

*see also Peraza v. State*, 467 S.W.3d 508, 517–18 (Tex. Crim. App. 2015) (holding that when a statute "provides for . . . allocate[ed] . . . court costs to be expended for" a purpose "relate[d] to the administration of our criminal justice system," it does not violate the Separation of Powers Clause). We see no reason to disturb this court's previous holding. We overrule Legans's second point.

## IV. CONCLUSION

Having overruled Legans's two points on appeal, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 27, 2019